IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| MICHAEL J. HOLLIS, § | |
|     Plaintiff, § | |
| V. § | |
| § | |
| NATIONAL UNIVERSITY, SANDI § | A-24-CV-481-RP |
| BEST, MARK MILLIRON, § | |
|     Defendants. § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO THE HONORABLE ROBERT PITMAN
UNITED STATES DISTRICT JUDGE:

Before the court are Defendants' Motion to Dismiss (Dkt. 12), Plaintiff's Motion for Summary Judgment (Dkt. 15), Plaintiff's Motion for Leave to File Sur-Reply (Dkt. 20), and all related briefing.[1] Having considered the pleadings, the relevant case law, and the entire case file, the undersigned submits the following Report and Recommendation to the District Judge.

**I.   BACKGROUND**

In April 2020, Michael Hollis was hired as an Assistant Professor of Education for Northcentral University ("NCU"). Dkt. 1 (Compl.) ¶ 12. He worked remotely from home primarily as a Doctoral Dissertation Chair and also taught research methodology and writing courses for doctoral students. *Id.* ¶ 13. Hollis has military service-connected disabilities that affect his concentration and anxiety and requires that all key deadlines and requirements be in writing for easy memory.[2] *Id.* ¶¶ 14, 18.

---

[1] The motions were referred by United States District Judge Robert Pitman to the undersigned for a Report and Recommendation as to the merits pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. *See* Text Orders dated June 25, 2024 and July 22, 2024.

[2] Hollis does not otherwise explain the nature of his disabilities.

1

In the Fall of 2021, it was announced that NCU was going to merge with National University ("NU"). *Id*. ¶ 16. Hollis alleges that as the merger drew closer, he was subjected to harassment from his supervisors and given coaching assignments designed for him to fail. *Id*. ¶¶ 19-26. He contends these were attempts at a constructive dismissal. *Id*. ¶ 27. He reported the issues to HR and asked for an investigation. *Id*. ¶ 28. The harassment then stopped. *Id*. However, one week from the scheduled merger, the harassment resumed, and he was abruptly terminated. *Id*. ¶¶ 29-30. He alleges that less than one year later, he discovered that nearly 100% of the faculty he taught with at NCU were no longer employed with NU. *Id*. ¶ 35. He asserts his supervisors had accomplished a mass layoff without triggering a WARN Act notice. *Id*.

Proceeding pro se, Hollis asserts employment discrimination claims under the American with Disabilities Act and the California Fair Employment and Housing Act ("FEHA"). *Id*. ¶¶ 36-39. In addition to naming NU as a defendant, he also names Sandi Best, NU's Associate Vice President of Human Resources; and Mark Milliron, NU's President and CEO; as defendants. Defendants have moved to dismiss. Hollis responded to that motion and also filed his own motion for summary judgment. Hollis has also moved to file a sur-reply to Defendants' motion to dismiss. All motions are currently before the court.

## II.   MOTION TO FILE SUR-REPLY

The court **GRANTS** Hollis's motion to file a sur-reply to Defendants' motion to dismiss.

## III.   MOTION TO DISMISS

Defendants move to dismiss, first arguing that Hollis cannot recover under California's FEHA because he was a Texas employee and Texas resident. Second, Defendants argue Hollis cannot recover against the individual defendants for his FEHA or ADA claims. Finally, Defendants argue Hollis has failed to plead facts that support his ADA claim. Hollis opposes the motion. In

responding to Defendants' motion, Hollis relies in part on things that happened during the EEOC investigation, but the issue before the court is whether the facts Hollis pleaded in his Complaint support his claims for relief. As such, statements made by either side, claims asserted and dropped, and statements made by the EEOC investigator or attorney are not relevant to the court's analysis.

### A.  Rule 12(b)(6) Standard of Review

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6) the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. v. Twombly*, 550 U.S. 544, 555-57 (2007). Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570. The Supreme Court has made clear this plausibility standard is not simply a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The standard is properly guided by "[t]wo working principles." *Id*. First, although "a court must 'accept as true all of the allegations contained in a complaint,' that tenet is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. Second, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Thus, in considering a motion to dismiss, the court must initially identify pleadings that are no more than legal conclusions not entitled to the assumption of truth, then assume the veracity of well-pleaded factual allegations and determine whether those allegations plausibly give rise to an entitlement to relief. If not, "the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id*. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

### B. FEHA Claim

Defendants argue that California's FEHA law does not apply to Hollis's employment. Hollis pleaded that although NU was a California company, he worked remotely from Texas during his employment. Compl. ¶¶ 1-2, 5.

FEHA makes it unlawful for an employer to discharge an employee because physical disability, mental disability, or medical condition. CAL. GOV'T CODE § 12940(a). If a State has only insignificant contact with the parties and the occurrence or transaction, the application of its law is unconstitutional. *Owens v. Circassia Pharms., Inc.*, No. 3:19-CV-02231-M, 2020 WL 10897905, at *2 (N.D. Tex. Apr. 16, 2020) (citing *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 310–11 (1981)). Specifically, courts have applied a presumption against applying FEHA extraterritorially. *Id*. (citing cases).

Extraterritorial application of California employment law requires Plaintiff to plead a sufficient basis of facts to establish that Plaintiff's work holds a substantial connection to California. *Sexton v. Spirit Airlines, Inc.*, No. 2:21-CV-00898-TLN-AC, 2023 WL 1823487, at *3 (E.D. Cal. Feb. 8, 2023). In deciding whether FEHA should apply outside of California, courts consider (1) situs of employment and (2) material elements of the cause of action. *Id*. Situs of employment consists of the employee's "principal place of work," "definite base of operations," or the location where the employee's work holds a substantial connection to. *Id*. To determine

4

whether the material elements of the cause of action established a substantial connection to California, courts look to the location of where the core of the alleged wrongful conduct, such as the termination decision, occurred. *Id*. The California Supreme Court evaluates extraterritoriality by assessing whether "the conduct that gives rise to liability" occurs within California. *Id*.

Defendants argue that FEHA does not apply to Hollis because he worked in Austin, Texas. Hollis responds that he was flown to California to perform work for NU and "this time spent working physically in California is where the harassment likely began." Dkt. 14 at 4. Hollis also argues that California law does not recognize virtual employees and virtual employees are considered employed at the location of their most immediate headquarters. Notably, Hollis offers no authority for this statement.

Hollis worked remotely from Austin, Texas. Compl. ¶¶ 5, 13. Hollis pleaded that in the Spring of 2021, NCU moved its headquarters to San Diego, California,[3] presumably to be in the same city as NU. *Id*. ¶ 17. Hollis pleaded that NU "is predominately online with a sizeable presence in Texas." *Id*. ¶ 3. Hollis does not expressly plead where NCU students were located. Hollis's pleaded facts do not convince the court that the situs of his employment was in California. Hollis pleaded that Associate Dean Briana Parsons and Dean Andy Riggle were "the two people responsible for [his] termination," *id*. ¶ 35, but he did not specifically plead where they were located. Hollis's pleaded facts also do not convince the court that the material elements of the cause of action were in California. Accordingly, Hollis has not pleaded sufficient facts to support his FEHA claim.

---

[3] Hollis also pleaded that after NCU relocated its headquarters, the "Dissertation Chair teaching load was reduced by 25% to comply with California labor practices." *Id*. ¶ 17. But NCU's decision to comply with California law is not dispositive.

### C. ADA Claim

Defendants argue Hollis failed to plead facts to support his claims that Defendants failed to accommodate his disability or harassed him. However, Hollis disclaims that he asserted a failure-to-accommodate claim in his Complaint. Dkt. 14 at 5-6 ("I have not asked this Court anything regarding accommodations."), 6 ("[T]his is not a case about accommodation."). Hollis asserts his claim is "about creating a policy or procedure that [Defendants] knew or should have known would have disproportionally impacted persons with disabilities." *Id.* at 6-7. In his Complaint, Hollis describes his claim:

> As stated in the above timeline of key events, my Associate Dean and Provost were both aware of my disabilities and had been accommodating them throughout my employment up until the merger between universities began happening. At this point they began creating an environment where an adverse employment action was inevitable. And according to their official reason for my termination, this campaign of harassment was directly responsible for my termination.

Compl. ¶ 36. Thus, the court understands that Hollis contends Defendants violated the ADA by assigning him tasks that they knew would be challenging, if not impossible, for him to complete because of his disability.

The ADA prohibits covered employers from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). To assert a claim of disability-based harassment, the plaintiff must plead facts that:

> (1) that [he] belongs to a protected group; (2) that [he] was subjected to unwelcome harassment; (3) that the harassment complained of was based on [his] disability or disabilities; (4) that the harassment complained of affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt, remedial action.

6

*Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235–36 (5th Cir. 2001). For conduct to be considered sufficiently severe or pervasive, it must be both objectively and subjectively offensive. *Issa v. Texas Dep't of Crim. Just.*, No. 1:22-CV-01107-ADA, 2023 WL 4923971, at *8 (W.D. Tex. Aug. 1, 2023), report and recommendation adopted, No. 1:22-CV-01107-ADA, 2023 WL 5352319 (W.D. Tex. Aug. 18, 2023) (analyzing a hostile work environment claim under Title VII and applying to same analysis to a similar claim under the ADA). In determining whether an employee's work environment was objectively offensive, courts consider the totality of the circumstances, including (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance. *Id*. No single factor is determinative. *Id*. "The legal standard for workplace harassment in this circuit is . . . high." *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 509 (5th Cir. 2003).

Defendants argue that Hollis's allegations do not rise to the level of plausibly creating a hostile work environment but were "routine employment decisions." Dkt. 12 at 10. Hollis alleges that he had military service-connected disabilities known to Riggle. Compl. ¶ 18. Hollis asserts he was first assigned a coaching activity in December 2021 after Parsons heard a student had commented on having a hard time reaching Hollis, despite the student denying the complaint. *Id*. ¶ 19. In the summer of 2022, Hollis "noticed a sudden increase in harassment from Parsons." *Id*. ¶ 23. He asserts he was receiving multiple emails a day about very common trivial matters, such as students with typos in their submitted dissertation chapters, students who had used the wrong address in the dissertation template, courses with zero enrollment that had not been fully set up. *Id*. He was also called out for things he had no role in, such as students enrolled in the wrong course. *Id*. These emails were cc'd to "quite a few higher ups, including Riggle." *Id*. In July 2022,

7

he was sent to level two of coaching. *Id*. ¶ 24. On a Thursday, he was assigned to write a heavily cited 24-page paper, due Monday, outlining all courses and deliverables in the entire dissertation sequence of courses. *Id*. This was a document he had actually requested during his first coaching session. *Id*. After he completed this task, he was assigned to write a heavily cited 56-page academic paper summarizing the key components of all qualitative and quantitative research methods available to doctoral students. *Id*. ¶ 25. He was given three business days to complete this task. *Id*. After he completed the assignment, his coach informed him that the assignments had actually come from Riggle and Riggle thought the last paper was not sufficient. *Id*. ¶ 26. Hollis then reached out to the director of Human Resources, asking that harassment stop and be investigated. *Id*. ¶ 28. The harassment did stop until September 2022. Id. ¶ 29. Hollis was once again accused of matters that were trivial or unrelated to him. *Id*. He was then terminated. *Id*. ¶ 30.

As pleaded, these facts are too vague to support Hollis's claim. Hollis does not describe the frequency of harassing emails, whether the language used was threatening or humiliating, or whether responding to the emails and the coaching sessions and assignments interfered with his work performance. Accordingly, Hollis has failed to adequately plead his ADA claim.

### D.   Individual Defendants

Defendants also argue that Sandi Best and Mark Milliron should be dismissed because the claims against them are inadequately pleaded and neither the FEHA nor the ADA provide for recovery against them. Neither Best nor Milliron are mentioned by name in Hollis's Complaint. Hollis argues that Best is mentioned as the NU HR Director in paragraphs 32-35. However, the events described in those paragraphs do not give rise to Hollis's asserted claims. Hollis argues that Milliron and Best "were fully aware, had the power to stop the negative employment action and correct it, and had a legal obligation to do the same." Dkt. 14 at 3. But Hollis pleaded no facts that

support his argument. Although he argues they knew of his termination, he does not argue that they knew of the harassment or were the decision makers with respect to his termination. In fact, he pleaded that Parsons and Riggs were "the two people responsible for my termination." Compl. ¶ 35. Accordingly, even if Hollis's claims against NU survived Defendants' motion, his claims against Milliron and Best would not.

### IV.    HOLLIS'S MOTION FOR SUMMARY JUDGMENT

On the same day he responded to Defendants' Motion to Dismiss, Hollis filed his own Motion for Summary Judgment. Dkt. 15. Hollis did not provide any evidence with his motion and instead argues that Defendants failed to deny certain things he either asserted in his Complaint or that were adjudicated in the EEOC investigation process. Hollis argues that his Complaint actually asserts that his termination was a direct or indirect result of disparate impact discrimination. *Id*. at 1. Hollis argues that the "coaching" activities were an attempt at a constructive dismissal.

Defendants argue that Hollis did not plead this claim and cannot assert a new claim in a summary judgment motion. They also argue the claim is premature as their motion to dismiss is still pending.

The court agrees the motion is premature. The motion also makes clear that there is some confusion among the parties and the court as to the nature of Hollis's claims. To the extent that Hollis intended to assert a disparate impact claim, the court notes that Hollis did plead he believed the coaching assignments were nearly impossible tasks and attempts at constructive termination. *See* Compl. ¶¶ 19-20, 23-27. But he did not plead how these tasks were nearly impossible because of his disabilities. *See id.*

## V. CONCLUSION

For the reasons given, Hollis has not adequately pleaded his claims. More importantly, but not raised by Defendants, Hollis did not plead how any alleged discrimination or harassment was related to his disability. The statutes at issue do not protect people with disabilities from *any* adverse employment action but only those that are based on their disabilities. Not only did Hollis not plead a link between the harassment or termination and his disabilities, but his other allegations undermine his arguments. He asserts that a year after his termination, nearly 100% of the faculty he had taught with at NCU were no longer employed with NU, and NU's goal of a mass layoff had been achieved. Compl. ¶ 35. Thus, Hollis asserts there were mass layoffs going on all around him but *he* was terminated because of his disability.

## VI. ORDER AND RECOMMENDATION

The court **GRANTS** Plaintiff's Motion for Leave to File Sur-Reply (Dkt. 20).

The undersigned **RECOMMENDS** that the District Judge **GRANT** Defendants' Motion to Dismiss (Dkt. 12) and **DISMISS** the Complaint **with prejudice**. The undersigned also **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Dkt. 15) be **DISMISSED**.

## VII. OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and

recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).

SIGNED October 11, 2024.

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE